# Commonwealth *v.* Clewell, Appellant.

*Food law—Oleomargarine—Coloration—Act of May 29, 1901, P. L. 327.*

1. The Act of May 29, 1901, P. L. 327, which prohibits the sale and manufacture of oleomargarine "which shall be an imitation of yellow butter produced from pure unadulterated milk, or cream of the same, with or without coloring matter," applies to all butter made wholly from the milk of cows by the ordinary processes of manufacture having a yellow color, although that color may vary in degree, and whether the natural color, or a color artificially produced in imitation of the natural color. It is not to be confined to butter made in June which has a distinct yellow color and which is known as "June butter" or "commercial butter."

2. On the trial of an indictment for violation of the act of May 29, 1901, where the evidence shows that the oleomargarine in question contained cotton seed oil and butter fat, and in the opinion of the expert chemist palm oil also, and that it possessed a distinct yellow butter color, the case is necessarily for the jury.

3. On the trial of such an indictment where samples of oleomargarine

and butter were to be sent out with the jury for the purpose of applying the testimony of the witnesses to the exhibits in the case, it is not error for the court to tell the jury that they ought not to substitute their own judgment irrespective of what the witnesses said, or their own comparisons of the samples for the sworn testimony which they had in the case.

4. In such a case an offer to introduce a sample of what was alleged to be yellow butter for the purpose of establishing a standard of comparison without offering to show that the proposed standard was in fact butter, was clearly inadmissible and properly rejected by the court. An offer to introduce a sample of artificially colored oleomargarine is also irrelevant.

Argued Dec. 4, 1911. Appeal, No. 145, Oct. T., 1911, by defendant, from judgment of Q. S. Northampton Co., Dec. T., 1910, No. 64, on verdict of guilty in case of Commonwealth *v.* Harris A. Clewell. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, BEAVER and PORTER, JJ. Affirmed.

Indictment for sale of oleomargarine colored to resemble butter. Before STEWART, J.

At the trial when J. H. Ohl, a witness for defendant, was on the stand, the following offer was made:

Mr. Rossiter: We propose to show by the witness on the stand that he is acquainted and knows of the classification of butter; that butter is commercially divided into two classes, known as white butter and yellow butter, and that exhibit No. 1 comes within the class known as white butter.

Mr. Bechtel: Objected to for the same reasons; the comparison must be between natural butter.

Objections sustained.

Exception, and bill sealed for defendant. [10]

Mr. Rossiter: It is proposed to show by the witness on the stand that the defendant's exhibit No. 7 is of the shade of what is known as yellow butter; this to be followed by evidence that exhibit No. 7 is artificially colored butter.

Mr. Bechtel: Objected to for the same reasons; the comparison must be between natural butter.

Objection sustained.

Exception, and bill sealed for defendant. [11]

Mr. Rossiter: The defendant proposes to prove by the witness on the stand that defendant's exhibit No. 8 is the color of yellow butter; this to be followed by evidence that the defendant's exhibit No. 8 is artificially colored oleomargarine.

Mr. Bechtel: We offer the same objection.

The Court: The objection is sustained. This ruling is predicated on the omission of the defendant to prove that it is yellow butter produced from pure and unadulterated milk and cream.

Exception and bill sealed for defendant. [12]

When O. M. Rechinger, a witness for defendant, was on the stand, he was asked this question:

Mr. Rossiter: I propose to identify, by the witness on the stand, a sample of colored oleomargarine, for the purpose of comparing with the exhibit No. 1, which is alleged to be of a color of yellow butter; this for the purpose of comparison.

Objected to by Mr. Bechtel.

Objection sustained, and bill sealed for defendant. [13]

Mr. Rossiter: We propose to have the witness identify an artificially colored yellow butter, for the purpose of comparison with exhibit No. 1.

Mr. Bechtel: Objected to as incompetent, irrelevant and immaterial.

Objection sustained.

Exception, and bill sealed for defendant. [14]


The court charged in part as follows:

Nor can you set up what is known as a trade standard; nor can you judge it by what some of the witnesses call the "commercial standard." Some of them spoke about the standard in New York, or in other places. Now you see if you had any such standard as that, you would be entirely at sea. You must take the standard which I have read for you from the act of assembly, "yellow butter produced from pure, unadulterated milk, or cream of

the same, with or without coloring matter." Now take that standard, take the evidence in the case and see how it sizes up with the standard. [8]

These exhibits which have been admitted are for your help and for your assistance. They are admitted for the purpose of comparison, and when the samples will be sent out to you, you can take those samples for the purpose of applying the testimony of the witnesses to the exhibits in the case, but remember, gentlemen of the jury, you ought not to substitute your own judgment irrespective of what the witnesses have said or your own comparison of the samples for the sworn testimony which we have had in this case. It is the testimony of the witnesses which should govern you, and the samples are as an aid in bringing to your minds what the witnesses said concerning them. [9]

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* among others were (7) refusal of binding instructions for defendant; (8, 9) portions of charge as above quoting, them; (10–14) rulings on evidence, quoting the bill of exceptions.

*R. S. Taylor,* with him *U. P. Rossiter,* for appellant, cited: Oleomargarine Inquiry, 38 Pa. C. C. Rep. 273.

*William M. McKeen,* district attorney, with him, *William F. Fackenthal* and *Edgar W. Bechtel,* for appellee, cited: Com. v. VanDyke, 13 Pa. Superior Ct. 484; Com. v. Mellet, 27 Pa. Superior Ct. 41.

OPINION BY HENDERSON, J., March 1, 1912:

The defendant was convicted on an indictment charging him with selling oleomargarine which was not "made and kept free from all coloration and ingredients causing it to look like yellow butter" in violation of the Act of May 29, 1901, P. L. 327. The question involved is thus stated:

"Whether the Act of Assembly of May 29, 1901, P. L. 327, Section 1, prohibiting the sale, manufacture, etc., of oleomargarine 'which shall be in imitation of yellow butter produced from pure, unadulterated milk, or cream of the same, with or without coloring matter,' means any shade or tint of yellow, and not what is commercially known as yellow butter.   In other words, is yellow butter in the act synonymous with any shade of butter yellow?"   In the argument of the appellant's counsel the statement is made that the only issue is, whether the oleomargarine sold by defendant contained coloring matter or ingredients causing it to look like yellow butter produced from pure, unadulterated milk, or cream of the same, with or without coloring matter.   The position taken by the appellant is "that the yellow butter named in the Act has reference to a certain standard of yellow butter which is the natural butter made in the month of June and which assumes a rich yellow color, but that natural butter made at any other time of the year falls below this standard of color." It is also contended that butter made at other times in the year than the month of June is generally artificially colored to resemble butter made in the month of June and that, therefore, butter so colored becomes a standard of the yellow butter to which the act of assembly refers and that the defendant should have been permitted to offer in evidence a sample of artificially colored butter for the purpose of showing that the oleomargarine which he sold was not of that color.   The issue thus presented is within narrow compass.   The position of the defendant asks us to declare that when the legislature speaks of "yellow butter" it means butter having the color of that product made in the month of June, but we are unable to find either in the words of the statute or from a consideration of the reasons leading to its enactment any warrant for such construction.   As has been repeatedly stated the principal object of the act was to prevent deception by dealers in oleomargarine and it would be a remarkable inference that care was only exercised toward the safeguarding of the

public against imposition as to butter made during one-twelfth of the year. Witnesses are not necessary to show that butter is not all of the same color whether made in the month of June or at any other time. Different shades of yellow appear in its production contingent on the breed of cows, the feed used, the time of year in which it is made and the process of manufacture, and when the phrase "yellow butter" is used we think the legislature intended to describe the general color inhering in that product. Any other construction would open every market to the sale of oleomargarine made in imitation of butter and no prohibition would exist except as to the imitation of the highest natural color of butter or of butter colored in imitation of it. This would defeat the very purpose of the act. It is our duty to give it a reasonable construction and to enforce it according to its spirit as well as its letter. If we should hold that the words "yellow butter" are equivalent to "commercial butter" as contended for by the appellant we would be deciding that the law forbids the sale of oleomargarine not made and kept free from all coloration or ingredients causing it to look like butter having the highest natural color of yellow or butter artificially colored in imitation of such highest natural color. This would be equivalent to re-enacting the statute and giving it an application and limitation which could not have been in legislative contemplation. The whole history of the legislation on this subject shows that what was aimed at is the prevention of fraud on the consumers by the sale to them of another substance as and for butter. It was recognized that oleomargarine when not artificially colored has a white or very light shade and that some butter because of the use of excessive heat in the making or some other cause might also be white or very light and that to make white butter a standard would be a practical prohibition of the manufacture of oleomargarine at all. Hence, the qualifying word "yellow." But there was no attempt to fix an absolute shade of yellow nor intention to permit an imitation of all shades of butter except that

which was colored to the highest degree of yellow which butter in its natural condition ever possesses. It was unimportant, therefore, to know what was recognized in the trade in New York or elsewhere as "yellow butter." It may be, as stated by the learned counsel for the appellant, that this is butter colored to imitate June butter and that the public taste at the large centers of trade demands this color, but a large part of the butter produced in the commonwealth is consumed in the localities in which it is produced and is sold from farms and creameries to local customers. These consumers were within the view of the legislature as well as dwellers in the largest cities and are entitled to the same protection. The yellow butter to which the act refers is not that sold in New York or Philadelphia alone but that which is produced on the farms and in the factories as well and is sold in its natural color or with the addition of coloring matter to increase its yellowness. The offer of artificially colored butter to establish a standard of color would not have helped the defendant, for the prohibition is against the imitation of yellow butter whether it be colored or not. If the commonwealth could show that the oleomargarine sold was in imitation of yellow butter produced from pure unadulterated milk and cream without coloring matter the case would be made out, and it was of no consequence that it was not like some sample of colored butter which the defendant proposed to bring into the case. As there was evidence clear and direct that the oleomargarine in question contained cottonseed oil and butter fat and in the opinion of the expert chemist palm-oil also, and that it possessed a distinct yellow butter color the case was necessarily one for the jury. The subject of the ninth assignment is a portion of the charge and contains instruction to the jury that the samples of oleomargarine and butter were to be sent out for the purpose of applying the testimony of the witnesses to the exhibits in the case and the court said to the jury that they ought not to substitute their own judgment irrespective of what the witnesses said

or their own comparisons of the samples for the sworn testimony which they had in the case. This part of the charge immediately followed a reference by the court to exhibits number one, nine and ten and the testimony of a chemist called by the defense who analyzed exhibits nine and ten and testified that they were pure butter containing no coloring matter. The instruction to the jury was not inappropriate, therefore, as they were not experts competent to determine the composition of the exhibits nor to say whether they were oleomargarine or butter unaided by the testimony of the witnesses. The instruction was not harmful to the defendant.

The offer to introduce a sample of what was alleged to be yellow butter for the purpose of establishing a standard of comparison without offering to show that the proposed standard was in fact butter was clearly inadmissible and properly rejected by the court. The offer to introduce a sample of artificially colored oleomargarine was irrelevant. There are doubtless various shades of color in oleomargarine. The jury would get no information from the sample offered which would be of benefit to them in determining whether the article sold by the defendant was like yellow butter. The court permitted the defendant to offer butter produced from pure unadulterated milk and cream, and exhibit number nine which was shown to be uncolored June butter was put in evidence. Testimony was also admitted to show that the defendant's oleomargarine resembled white butter and the issue was squarely made as to its likeness to yellow butter. Unless, therefore, the defendant can maintain his position that he may sell oleomargarine of all shades of butter color except the deepest shade of yellow exhibited in June butter he has no defense and this in our view of the statute is not a maintainable position.

The assignments of error are all overruled, the judgment is affirmed and the record remitted to the court below to the end that the sentence be carried into execution.